IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MICHELE LORD,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | CIVIL ACTION NO. 4:21-cv-00031 |

# **O R D E R**

Presently before the Court is Defendant American General Life Insurance Company's Motion to Dismiss. (Doc. 5.) Plaintiff asserts a breach of insurance contract claim against American General Life Insurance Company ("American"), arguing that the company failed to pay her long-term disability benefits as it was allegedly required to under the terms of an insurance policy. (Doc. 1-1.) In its Motion to Dismiss, American argues that Plaintiff's claim is barred by res judicata and collateral estoppel, and it also argues that Plaintiff's claim is time-barred. (Doc. 5.) For the following reasons, the Court **GRANTS** American's Motion to Dismiss. (Id.)

## BACKGROUND

### I. Plaintiff's Injury and the Long-Term Disability Policy

According to the Complaint, Plaintiff "was [previously] employed by the Georgia Ports Authority as a protective service officer which provided disability insurance benefits under an American General Group Long Term Disability Policy," ("the Policy"). (Doc. 1-1, p. 4.) In order to receive long-term disability benefits ("LTD benefits") an insured had to meet specific qualifications including the following:

> If you are disabled during the *elimination period* and the next 36 months, you will continue to receive payments beyond 36 months of disability, if you are also:
>
> - working in any occupation and continue to have a 20% or more loss in your *indexed monthly earnings* due to your *sickness* or *injury*; or
>
> - not working, and due to the same *sickness* or *injury*, are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training, or experience.

(Doc. 5-4, p. 99 (emphasis in original).)[1] The elimination period "means a period of continuous *disability* that must be satisfied before you are eligible to receive benefits from [American]." (Id. at p. 100 (emphasis in original).) A "gainful occupation" is one "that is, or can be, expected to provide you with an income equal to 80% of your indexed monthly earnings within 12 months of your return to work." (Id.) The Policy also provides that "[l]egal action may only be brought against [American] during a certain period. This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required." (Id. at p. 30.) Finally, the Policy also states that it "is governed by the laws of the governing jurisdiction and to the extent applicable, by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto." (Id. at p. 118.)

In her Complaint, which she originally filed in the Magistrate Court of Chatham County on December 1, 2020, Plaintiff alleges that she was injured on the job in 2009 and 2011. (Doc. 1-

---

[1] American attached a copy of the Policy as Exhibit D to its Motion to Dismiss. (Doc. 5-4.) The Federal Rules of Civil Procedure provide that, if "matters outside the pleadings are presented to and not excluded by the court[,]" then a Rule 12(b)(6) motion to dismiss must be treated as a motion "for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, a document attached to a motion to dismiss "may be considered by the court without converting the motion into one for summary judgment . . . if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." Id. Here, Plaintiff's breach of contract claim is based upon the terms in the Policy, so it is undoubtedly central to her claim. In addition, Plaintiff does not dispute that this is the Policy that governs her claim. Indeed, her Complaint states that the policy number is G255707, (doc. 1-1, p. 5), and this is the same number listed on the Policy, (doc. 5-4, p. 2).

1, p. 4.) She asserts that she "became disabled on June 25, 2011," and "was disabled during the elimination period and the subsequent thirty-six (36) months." (Id. at p. 5.) She claims, however, that American "wrongfully terminated" her LTD benefits on February 23, 2015. (Id. at p. 5.) Plaintiff also asserts that she "has suffered more than a twenty (20) percent loss in her indexed monthly earnings due to her injuries." (Id. at p. 5.) She prays for an award of "unpaid [LTD] benefits due under [the Policy]" and "all accrued interest on the unpaid [LTD] benefits due to [her] from March 19, 2019 to the present." (Id. at pp. 5–6.)

## II. Plaintiff's 2017 Lawsuit against American

This is not Plaintiff's first lawsuit against American for benefits under the Policy. In 2017, Plaintiff filed suit against American and included a claim for "Breach of Insurance Contract." (See doc. 5-1.)[2] She alleged that she had become disabled on June 25, 2011, that her LTD "benefits were wrongfully terminated on February 23, 2015," and that American had "refuse[d] to continue paying [LTD] benefits to [her] under [the Policy]." (Id. at p. 9.) After removing the case from state court to this Court, American filed a Motion for Summary Judgment, arguing that its denial

---

[2] American attached several documents related to this prior suit as exhibits to its Motion to Dismiss. (Doc. 5-1; doc. 5-2; doc. 5-3.) Exhibit A to the Motion contains a copy of American's 2017 notice of removal, which removed the 2017 case from the State Court of Chatham County to this Court, as well as a copy of Plaintiff's complaint initiating the 2017 case. (Doc. 5-1.) Exhibit B is a copy of American's motion for summary judgment in that 2017 suit. (Doc. 5-2.) Exhibit C is a copy of this Court's Order granting American summary judgment on Plaintiff's 2017 complaint. (Doc. 5-3.) The Court may take judicial notice of public records, such as pleadings and orders from prior cases. Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (finding consideration of exhibits attached to motion to dismiss, including E.E.O.C. right-to-sue letter, proper because they were central to plaintiff's claims and were undisputed and also finding that the court could take judicial notice of documents because they were filed in plaintiff's prior civil case). Accordingly, the Court takes judicial notice of Exhibits A through C attached to the Motion to Dismiss because they were all pleadings or orders filed in the 2017 lawsuit before this Court. See Lord v. Am. Gen. Life Ins. Co. of Del., No. 4:17-cv-00167, doc. 1 (S.D. Ga. Sept. 7, 2017); id. at doc. 17 (S.D. Ga. Feb. 23, 2018); id. at doc. 32 (S.D. Ga. Mar. 18, 2019). Additionally, the Court also takes judicial notice of Plaintiff's Statement of Material Facts as to Which There Exists Genuine Issues of Material Fact to be Tried which is also part of the record in the 2017 suit. Id. at doc. 22-2 (S.D. Ga. Mar. 30, 2018). Accordingly, in ruling on American's Motion to Dismiss, the Court will consider these documents alongside Plaintiff's Complaint.

3

of Plaintiff's LTD benefits was not wrong because its review of Plaintiff's records showed that she was able to perform a "gainful occupation" as defined by the Policy.[3] (Doc. 5-2, pp. 10–13.) In responding to American's Motion for Summary Judgment, Plaintiff submitted, among other things, "Plaintiff's Statement of Material Facts as to Which There Exists Genuine Issues of Material Fact to be Tried." Lord v. Am. Gen. Life Ins. Co. of Del., No. 4:17-cv-00167, doc. 22-2 (S.D. Ga. Mar. 30, 2018). Therein, Plaintiff claimed that "[t]here are genuine issues of material fact as to whether the estimated wage ranges for the identified occupations meet or exceed Plaintiff's indexed monthly earnings" and that "[t]here are genuine issues of material fact as to whether the jobs identified by the Vocation Rehabilitation Counselor exceed Plaintiff's prior income, accounting for index increases." Id. at 3. On March 18, 2019, the Court granted summary judgment to American, finding that American's decision to deny LTD benefits was not arbitrary or capricious. (Doc. 5-3, pp. 11–17.)

## STANDARD OF REVIEW

Under a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009)

---

[3] This Court summarized American's denial and the reasons for it in its Order granting summary judgment to American in the 2017 case as follows:

> [Two vocational rehabilitation counselors hired by American to perform an Employability Assessment/Occupational Review] identified seven gainful occupations Plaintiff could perform that offered wages which met or exceeded Plaintiff's indexed monthly earnings. On February 23, 2015, as a result of the information provided by [Plaintiff's two treating physicians] and the subsequent reviews by other experts as well as the 2012 [functional capacity evaluation], Defendant denied Plaintiff's claim for continued LTD benefits.

(Doc. 5-3, pp. 6–7 (record citations omitted).) Thereafter, American denied Plaintiff's appeal for continued LTD benefits, explaining that "Plaintiff had the 'ability to perform at the sedentary to light physical demand level and, while she may not be capable of performing her job for her former employer, she is qualified and capable of performing other gainful work.'" (Id. at p. 9 (quoting administrative record).)

(citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)). A complaint must state a facially plausible claim for relief, and "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678 (internal quotations omitted).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id. (internal citation omitted). In addition, when a dispositive issue of law allows for no construction of the complaint's allegations to support the cause of action, dismissal is appropriate. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## DISCUSSION

Plaintiff claims that American "is liable for breach of contract" because it "failed and refuses to continue paying [LTD] benefits to Plaintiff under [the Policy]." (Doc. 1-1, p. 5.) In its Motion to Dismiss, American argues that Plaintiff's claim fails for multiple reasons. (Doc. 5, pp. 6–11.) First, American asserts that Plaintiff's claim is barred by res judicata because the Court granted American summary judgment on Plaintiff's 2017 suit. (Id. at pp. 6–7.) American also

argues that Plaintiff's claim is time-barred under the terms of the Policy.[4] (Id. at pp. 9–10.) Plaintiff filed a Response to the Motion to Dismiss, (doc. 9), and American filed a Reply, (doc. 13). Plaintiff then filed an additional Response. (Doc. 15.) For the following reasons, the Court agrees with American and **GRANTS** its Motion to Dismiss. (Doc. 5.)

I.    **Plaintiff's Claim is Barred by Res Judicata**

In the 2017 litigation, the Court granted American summary judgment on Plaintiff's breach of insurance contract claim which was based on the claim that American wrongfully refused to pay her benefits under the same Policy that is at issue in Plaintiff's present breach of contract claim. (Doc. 5-2; see also doc. 5-4.) American argues that Plaintiff's breach of insurance contract claim in this action is therefore barred by res judicata. (Doc. 5, pp. 6–7.) "Res judicata is a judicially crafted doctrine, created to provide finality and conserve resources." Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1375 (11th Cir. 2011). "Res judicata, or claim preclusion, will prohibit a party from re-litigating a claim where a judgment on the merits (involving the same claim and the same parties) exists from a prior action." Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1289 (11th Cir. 2007). "[A] claim is precluded by the judgment in a prior case when (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the judgment was final and on the merits; (3) both cases involve the same parties or those in privity with them; and (4) 'both cases . . . involve the same causes of action.'" Borrero v. United Healthcare of N.Y., Inc., 610

---

[4] American also argues that Plaintiff's claim is barred by collateral estoppel. (Doc. 5, p. 7.) Because the Court finds that Plaintiff's claim should be dismissed for multiple other reasons, it declines to reach this argument.

F.3d 1296, 1306 (11th Cir. 2010) (quoting In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001)).[5]

Plaintiff does not appear to dispute that the Court's summary judgment order in the 2017 action was rendered by a court of competent jurisdiction or that it was a final judgment on the merits. She also does not appear to dispute that the present action and the 2017 action involve the same parties. However, Plaintiff asserts that res judicata does not bar her claim "because the instant lawsuit involves a second independent action." (Doc. 9, p. 4.) Plaintiff argues that the present cause of action differs from the 2017 litigation because in that case "Plaintiff sought relief due to permanent disability whereas in the instant case, the Plaintiff seeks relief for loss of income." [6] (Id.) In its Reply Brief, American contends that both actions are based on American's

---

[5] Plaintiff argues that Georgia law should be applied to the res judicata issue instead of federal law. (Doc. 9, pp. 3–5.) Plaintiff is correct that "when a federal court exercises federal question jurisdiction and is asked to give res judicata effect to a state court judgment, it must apply the 'res judicata principles of the law of the state whose decision is set up as a bar to further litigation.'" Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985) (quoting Hernandez v. City of Lafayette, 699 F.2d 734, 736 (5th Cir. 1983)). Here, however, American claims that this Court's previous judgment in the 2017 action—not a state court's judgment—should be given res judicata effect in the present case. In addition, in the 2017 litigation, the Court applied federal ERISA law—not Georgia law—in granting summary judgment to American. (See doc. 5-3.) The Court is aware of no case law (and Plaintiff points to none) that indicates that a district court should apply state law when examining whether to apply res judicata to a prior federal court judgment.

[6] Plaintiff argues that the Policy "provides that a loss of income makes Plaintiff eligible for such [LTD] benefits," but neglects to quote or even cite to any particular part of the Policy that she claims provides such benefits. (Doc. 15, p. 2.) American disputes that the Policy provides coverage for loss of income that is separate from and in addition to its LTD benefits coverage. (Doc. 13, pp. 3–4.) The Court's own review of the Policy did not reveal any provision that clearly entitles an insured to benefits for "loss of income" even where American has terminated that insured's LTD benefits and the termination has been upheld by a court. Nonetheless, even assuming Plaintiff is correct about the extent of the Policy's coverage, her Complaint still has deficiencies preventing her from bringing her breach of contract claim. The Policy states that it "is governed by the laws of the governing jurisdiction and to the extent applicable, by [ERISA]." (Doc. 5-4, p. 118.) American asserts in its Motion to Dismiss that this action is "subject to ERISA," (doc. 5, p. 2 n.1), and Plaintiff indicates agreement with this assertion, (see doc. 9, p. 2 ("ERISA provides protection for those who have suffered (1) permanent[] disability or (2) loss of income.")). "Pursuant to ERISA, employers must establish procedures for reviewing employees' claims under their employee benefit plans. Eleventh Circuit precedent requires employees to exhaust these procedures before filing suit for benefits under ERISA." Byrd v. MacPapers, Inc., 961 F.2d 157, 160 (11th Cir. 1992) (internal

alleged wrongful termination of Plaintiff's LTD benefits, so the fourth element is met. (Doc. 13, p. 5.)

"In order to determine whether the two proceedings are based on the same cause of action, the test is whether they 'arise[ ] out of the same nucleus of operative fact, or [are] based upon the same factual predicate.'" In re Atlanta Retail, Inc., 456 F.3d 1277, 1288 (11th Cir. 2006) (alteration in original) (quoting In re Piper Aircraft Corp., 244 F.3d at 1297)). The Eleventh Circuit "has recognized that res judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co., 959 F.3d 1318, 1325 (11th Cir. 2020). Here, the complaint from the 2017 action and the Complaint in the instant action both assert "Breach of Insurance Contract" claims against American and assert verbatim that "Defendant failed and refuses to continue paying long-term disability benefits to Plaintiff under policy number G255707." (Compare doc. 1-1, p. 5 with doc. 5-1, p. 9.) Both complaints also state that Plaintiff became disabled on June 25, 2011 and both seek LTD benefits "through and including April 11, 2031." (Id.) Based upon these allegations it appears that the 2017 complaint contains "a broad nucleus of fact that would encompass" the claim in the litigation at bar. Adams, 493 F.3d at 1290.

---

citation omitted). For claims under ERISA, "the Eleventh Circuit has made clear that a plaintiff must allege the exhaustion of the administrative procedures in the complaint." C.P. Motion, Inc. v. Aetna Life Ins. Co., 268 F. Supp. 2d 1346, 1348 (S.D. Fla. May 14, 2003). Plaintiff does not allege in her Complaint that she exhausted these procedures before filing her Complaint. She does allege that she "has met all conditions precedent to Defendant's claim requirements." (Doc. 1-1, p. 5.) However, this allegation is insufficient to meet the exhaustion requirement. See Variety Child.'s Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 n.2 (11th Cir. 1995) ("We agree with the district court that [plaintiff's] attempt to circumvent this requirement by alleging in its Corrected Amended Complaint that it had complied with 'all conditions precedent' . . . does not address the exhaustion requirement."). Plaintiff's Complaint is subject to dismissal on this alternative ground.

The Complaint in the present action, however, additionally alleges that "Plaintiff has suffered more than a twenty (20) percent loss in her indexed monthly earnings due to her injuries," an allegation that was not included in the 2017 complaint. (Doc. 1-1, p. 5.) Plaintiff argues that this allegation requires evidence that "was not called for or necessary to the prior 2017 lawsuit" and that "the injuries suffered from the loss of income could not have been known at the time." (Doc. 9, pp. 4–5.) However, Plaintiff also states that "[t]he identity of the instant claim is loss of income based on the fact that since Plaintiff's 2011 injury, Plaintiff's income has dramatically decreased more than the required twenty (20) percent loss of the indexed monthly earnings." (Id. at p. 4.) Plaintiff fails to explain how, if this loss of income claim dates back to her 2011 injury, she was unaware of it when she filed her 2017 action. In addition, and more importantly, in the 2017 litigation, Plaintiff submitted a "Statement of Material Facts as to Which There Exists Genuine Issues of Material Fact to be Tried." Lord v. Am. Gen. Life Ins. Co. of Del., No. 4:17-cv-00167, doc. 22-2 (S.D. Ga. Mar. 30, 2018). Within this document, Plaintiff stated that "[t]here are genuine issues of material fact as to whether the estimated wage ranges for the identified occupations meet or exceed Plaintiff's indexed monthly earnings" and that "[t]here are genuine issues of material fact as to whether the jobs identified by the Vocation Rehabilitation Counselor exceed Plaintiff's prior income, accounting for index increases." (Id. at p. 3.) Thus, Plaintiff clearly raised factual issues about income and wages before the Court in the 2017 litigation, which further suggests that her claim to recover for lost income is now barred in this action.[7] See In re

---

[7] As described in Background Section I, supra, the Policy required that, in order to "continue to receive payments beyond 36 months of disability," Plaintiff had to have been not only "disabled during the elimination period and the next 36 months," but also either "working in any occupation and continu[ing] to have a 20% or more loss in [her] indexed monthly earnings due to [her] . . . injury," or "not working, and due to the . . . injury, . . . unable to perform the duties of any gainful occupation for which [she was] reasonably fitted by education, training, or experience." (See doc. 5-4, p. 99.) In its Order granting summary judgment to American in the 2017 action, this Court upheld American's determination that

9

Atlanta Retail, Inc., 456 F.3d at 1288 ("If the evidence crucial to the second action was never raised before the court in the first action, it is 'powerful evidence' that the two cases are not based on the same nucleus of operative fact."). This Statement of Material Fact also shows that—even assuming, *arguendo*, that the Policy provides for stand-alone "loss of income" benefits—Plaintiff was aware that she may have a claim for breach of contract predicated on loss of income and thus "could have . . . brought" the claim when she filed her 2017 complaint; this further supports barring the claim now under the principle of res judicata. Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992).

If Plaintiff wanted to fight about the decrease in her income and whether it entitled her to LTD benefits, the time to do so was in the 2017 lawsuit and in the internal administrative proceedings that led up to that lawsuit. The only provisions in the Policy that reference 20% reductions in income (or 80% of a claimant's indexed monthly earnings) speak in terms of projections and expectations. Those formulas are part of the guidelines that the Policy required American to follow in projecting or estimating Plaintiff's ability to be gainfully employed such that she did not require (or, put another way, was not entitled to) LTD benefits. Plaintiff does not point to and the Court is unable to locate (and American denies the existence of) any provision in the Policy that permits an insured who is denied LTD benefits (and is unsuccessful in seeking to have that denial reversed) to do what Plaintiff seeks to do now—to come back at some (unspecified) later date and demand benefits that compensate her in some (unspecified) amount because her actual income at the employment she chose after being denied LTD benefits ended up

---

Plaintiff was capable of performing a "gainful occupation" (i.e., one "that [was], or [could] be, expected to provide [her] with an income equal to 80% of [her] indexed monthly earnings within 12 months of [her] return to work," (id. at p. 100). (Doc. 5-3, pp. 14–17.) Thus, the issue of whether she would see a loss of future income—and, if so, to what extent—was a central issue in the 2017 case.

equaling less than 80% of her pre-injury earnings (contrary to American's expectations based on medical opinions). Accordingly, the Court concludes that the time for Plaintiff to seek to prove that her income was not—or should not have been expected to be—equal to 80% of her indexed monthly earnings was in the 2017 action.

For all of these reasons, the Court finds that Plaintiff's breach of insurance contract claim is barred by the res judicata effect of the Court's decision in the 2017 action. Accordingly, the Court **GRANTS** American's Motion to Dismiss. (Doc. 5.)

## II. Plaintiff's Claim is Time Barred

American also argues that Plaintiff's claim is time-barred. (Doc. 5, pp. 9–10.) Neither party disputes that Plaintiff's claim is subject to ERISA.[8] (See doc. 5, p. 2 n.1; doc. 9, p. 2.) "Civil enforcement of ERISA is provided for in section 502 of the Act, codified at 29 U.S.C.A. § 1132." Harrison v. Digit. Health Plan, 183 F.3d 1235, 1238 (11th Cir. 1999). "ERISA does not provide a statute of limitations for suits brought under § 502(a)(1)(B) to recover benefits." Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan, 160 F.3d 1301, 1303 (11th Cir. 1998). Accordingly, a court must borrow the most closely analogous state limitations period unless "the parties have contractually agreed upon a limitations period." Id. Here, under the terms of the Policy, "[l]egal action may only be brought against [American] during a certain period. This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required." (Doc. 5-4, p. 30.) The Supreme Court has stated that three years is a reasonable limitations period to impose on a disability policy. See Heimeshoff v.

---

[8] Even if Plaintiff's claim was not subject to ERISA, Georgia law also provides that "[c]ontractual periods of limitation are generally enforceable." Wolf Creek Landfill, LLC v. Twiggs Cnty., 786 S.E.2d 862, 864 (Ga. Ct. App. 2016) (alteration in original) (quoting N4D, LLC v. Passmore, 765 S.E.2d 717, 719 (Ga. Ct. App. 2014)). Thus, the Policy's contractual limitation period is valid regardless of whether federal ERISA law or Georgia law is applied.

11

Hartford Life & Accident Ins. Co., 571 U.S. 99, 109 (2013). Plaintiff's Complaint does not specify when she filed a proof of claim. However, Plaintiff's Complaint states that American did initially pay Plaintiff LTD benefits and stopped on February 23, 2015, (doc. 1-1, p. 5), so she must have filed a proof of claim sometime before this, (see doc. 5-4, p. 28 ("To file a claim, a person must complete a proof of claim form.")). Thus, even the most generous view of the facts would have the limitations period on Plaintiff's claim expire in February 2018. Plaintiff filed her Complaint to initiate this action on December 1, 2020, more than two years later. (Doc. 1-1, p. 6.)

Plaintiff does not dispute that normally her claim would be barred by the contractual limitations period but asserts that she "is entitled to the remedy of equitable tolling because of the time required to establish loss of income and the consequences of such could not have been discovered before the contractual time limits expired." (Doc. 9, p. 7.) "The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims."[9] Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006). "Equitable tolling is a form of extraordinary relief that courts have extended 'only sparingly.'" Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1197 (11th Cir. 2008) (quoting Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990)). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Motta *ex rel*. A.M. v. United

---

[9] There is no Eleventh Circuit precedent stating that equitable tolling also applies to a contractual limitations period. However, the Supreme Court has suggested that "equitable tolling may apply" to the limitations period in an insurance benefits plan subject to ERISA. Heimeshoff, 571 U.S at 114. In addition, in an unpublished opinion, the Eleventh Circuit has applied the equitable tolling doctrine to a contractual limitation period. See Wilson v. Standard Ins. Co., 613 F. App'x 841, 844 (11th Cir. 2015) (per curiam) ("Under these circumstances, we believe that the contractual limitations period is enforceable unless [plaintiff] can establish that she is entitled to equitable tolling . . . ."). Accordingly, the Court will determine whether equitable tolling should apply to the facts of this case.

States, 717 F.3d 840, 846 (11th Cir. 2013) (quotation omitted). The Plaintiff "must establish that tolling is warranted." Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004).

Plaintiff argues that equitable tolling is appropriate because she "could not have known the existence or prevalence of her loss income" until after the Court granted summary judgment to American in the 2017 litigation. (Doc. 9, p. 6.) The Court issued its summary judgment order in the 2017 litigation on March 18, 2019. (Doc. 5-3, p. 19.) As previously noted, Plaintiff did not file her Complaint in this action until December 1, 2020, (doc. 1-1, p. 6)—more than twenty months after the Court issued its summary judgment Order. Plaintiff states that she filed her Complaint in this action "after analyzing and calculating her loss of income and if such would meet the disability definition" under the terms of the Policy. (Doc. 9, p. 6.) However, Plaintiff provides no explanation or further details for why this analysis and calculation took her more than a year and half to complete. She does state that if her "loss of income [had been] immediately apparent, [she] would have filed her lawsuit at a much earlier date." (Id. at p. 7.) Even assuming the veracity of Plaintiff's assertion that her loss of income could not be calculated immediately after the Court's summary judgment Order, this still does not explain the considerable length of time it took for Plaintiff to initiate this action. "Equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence." Bost, 372 F.3d at 1242. Accordingly, even assuming equitable tolling could apply to Plaintiff's claims, her inability to show diligence precludes the application of the equitable tolling doctrine to her Complaint. For these reasons, the Court **GRANTS** American's Motion to Dismiss on the alternative ground that Plaintiff's claim is time barred. (Doc. 5.)

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** American General Life Insurance Company's Motion to Dismiss. (Doc. 5.) The Court **DIRECTS** the Clerk of Court to enter an appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 21st day of June, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA